IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

DONNA WHITE, )
 )
        **Plaintiff,** )
 )
v. ) Case No. 15-CV-443-PJC
 )
CAROLYN W. COLVIN, )
Acting Commissioner of the )
Social Security Administration, )
 )
        **Defendant.** )

## OPINION AND ORDER

Plaintiff, Donna White ("White") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner" and "SSA") denying her application for disability insurance benefits Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* For the reasons discussed below, the Commissioner's decision is AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520.[1]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510. Step Two requires that the claimant establish that

Cir. 2009) (detailing steps). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004).

"Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Wall*, 561 F.3d at 1052 (quotation and citation omitted). Although the court will not reweigh the evidence, the court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

## Background

White was fifty years old on the amended alleged date of onset of disability and fifty-six on the date of the Commissioner's final decision. [R. 1,]. She has a high school education and

---

she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings"). A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to Step Four, where the claimant must establish that she does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account her age, education, work experience, and RFC, can perform. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. 20 C.F.R. § 404.1520.

two years of college. [R. 653]. She has previous experience as a child care worker, a receptionist and restaurant salad bar worker. [R. 275-282 (Ex. 1E)]. In her application, she claimed to have been unable to work since June 1, 2009, as a result of neck and lung problems, PTSD, diabetes, asthma, high blood pressure, fibromyalgia and acid reflux. [R. 287 (Ex. 3E)].

## The ALJ's Decision

In his decision, the ALJ found that White last met insured status requirements on December 31, 2011, but not thereafter, and, at Step One, that she had not engaged in any substantial gainful activity from the relevant period of July 31, 2009, through her date last insured of December 31, 2011. [R. 17]. He found at Step Two that White had severe impairments of degenerative disc disease; status post fusion at C3-4 and C4-5; status post fusion at C-5; bilateral carpal tunnel syndrome; status post right carpal tunnel release; chronic obstructive pulmonary disease; diabetes; obesity; an adjustment disorder with depressed mood; posttraumatic stress disorder; and a panic disorder. *Id.* At Step Three, he found that the impairments did not meet or medically equal any listing. *Id.* He concluded that White had the following residual functional capacity ("RFC"):

> [T]hrough the date last insured, the claimant had the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for at least 6 hours out of an 8-hour workday; and sit at least 6 hours out of an 8-hour workday, all with normal breaks (Light work is defined in 20 CFR 404.1567(b)) except she should avoid working above shoulder level and no constant use of the hands for handling, fingering, and feeling. She is further limited to simple, repetitive tasks, can relate to supervisors and co-workers only superficially, and cannot work with the public.

[R. 19]. At Step Four, the ALJ determined that, based on the RFC, the claimant, through the date last insured, was unable to perform any past relevant work. [R. 24]. At Step Five, he found that, considering White's age, education, work experience and residual functional capacity, there were jobs existing in significant numbers in the national economy that she could perform, including

3

electrical assembler (DOT #729.687-010) 16,000 jobs regionally and 172,000 jobs nationally; and mail clerk (DOT #209.687-026) 18,000 jobs regionally and 149,000 jobs nationally.

Accordingly, the ALJ found that White had not been under a disability from October 1, 2007, through December 31, 2011, the date last insured. [R. 25].

## Plaintiff's Allegations

On appeal, White asserts that: (1) the ALJ failed to properly consider the medical source opinions; (2) the ALJ failed to properly consider plaintiff's credibility; and (3) the ALJ's RFC assessment and the finding that the plaintiff can perform other work are not supported by substantial evidence.

## Analysis

### 1. Consideration of Medical Source Opinions

White takes issue with the treatment the ALJ gave the reports of two consulting psychologists—Jan Snider Kent, Ph.D. and Kenny A. Paris, Ph.D.—who examined White. [R. 441-447 (Ex. 11F); R. 651-657 (Ex. 15F)].

Dr. Kent concluded, *inter alia*, that because of her PTSD symptoms and panic attacks, White would be unable to concentrate and persist on even simple tasks during a normal workday. [R. 446]. The ALJ gave this opinion "little weight" because it was inconsistent with her mental status evaluation. [R. 21]. Specifically, he cited Dr. Kent's report that claimant "showed no significant attention or concentration difficulties" on the mental status evaluation and was "able to understand and remember complex instructions during a normal workday." [R. 21, R. 445-446 (Ex. 11F)].

White contends Dr. Kent's opinion was supported by her statement that White's "speech was quite rambling" and "[s]he presented information in a very disorganized fashion. She had to

be repeatedly interrupted to obtain information." [R. 444 (Ex. 11F)]. She also cites GAF scores from Grand Lake Mental Health Center that she claims indicate serious impairments. [Dkt. #18 at 8].[2]

However, the inconsistencies in Dr. Kent's report form a valid basis for discounting her opinion. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013) (affirming ALJ's decision discounting treating physician's opinion where it was inconsistent with the physician's treating notes from the same day). This court will not reweigh the evidence or substitute its own judgment for that of the Commissioner. *See Lax*, 489 F.3d at 1084.

White also complains that while the ALJ gave "great weight" to the opinion of consultative examining physician Kenny A. Paris, Ph.D., he incorrectly stated in his decision that "Dr. Paris stated that the claimant could perform adequately in most job situations and handle the stress of a work setting, but her ability to deal with supervisors and coworkers was below average (Exhibit 15F)." [R. 21]. The Commissioner concedes the ALJ's statement was erroneous and acknowledges that the psychologist actually stated:

> From a psychological standpoint, based on her reported symptoms, history and performance on this exam, *her ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers is estimated to be below average*.

[R. 655 (Ex. 15F) (emphasis added)]. However, the court concurs with the Commissioner's assertion that the RFC formulated by the ALJ ("She is further limited to simple, repetitive tasks, can relate to supervisors and co-workers only superficially, and cannot work with the public.") adequately accounts for her mental limitations.

---

[2] The GAF scores were 48 on October 28, 2010; 46 on November 4, 2010; and 47 on May 3, 2011 [R. 690, 1048, 1058 (Exs. 18 F, 32F)]. However, "generalized GAF scores, which do not specify particular work-related limitations, may be helpful in arriving at an RFC but are not 'essential to the RFC's accuracy.'" *Luttrell v. Astrue*, 453 Fed. Appx. 786, 792 n. 4 (10th Cir. 2011) (unpublished).

## 2. Credibility Determination

White contends the ALJ erred in her credibility determination. "[C]redibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations, when supported by substantial evidence." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (internal quotation marks and citation omitted). Those findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (internal quotation marks and citation omitted). "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

In assessing White's credibility, the ALJ stated:

> [T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

[R. 20]. Additionally, he supported this assessment by citing the two psychological evaluations discussed above and additional evidence, including:

- Although claimant alleged PTSD since 2007, she did not seek treatment from a mental health care professional until October 2010. [R. 22].

- There is no evidence that the claimant was seen at Grand Lake Mental Health from November 2011 until October 2012, which is inconsistent with her complaints of totally disabling depression, anxiety and panic attacks and "significantly reduces her credibility." [R. 22, Ex. 32F].

- White was seen at Cherokee Nation Health Services on January 19, 2011 for cough and congestion; on February 22, 2011, for cough, congestion and fever; on November 4, 2011, for head congestion, and December 7, 2011, for severe cough. There was no evidence of treatment for pain during this period. [R. 22, R. 1208-1270 (Ex. 38F)].

- On February 24, 2009, White was not taking her diabetic medication, not complying with a diet and not exercising. [R. 22, R. 606 (Ex. 14F)].

- During a consultative physical examination on September 17, 2010, White demonstrated 5/5 strength with full range of motion in all extremities and claimant could look up. Dr. Gourd stated the exam was less than fully reliable because White made little effort during the range of motion evaluation and gave less than optimal effort (citing the example that both of claimant's shoulders "stuck" at exactly the same level). [R. 22, R. 658-663 (Ex. 16F)].

- On November 16, 2010, White's counselor stated that the claimant was "extremely somatic" and "tends to exaggerate" her behaviors and symptoms, and that during the course of explaining her car wreck, "her story changed each time." [R. 22, R. 707 (Ex. 18F), R. 1081 (Ex. 32F)].

- On October 26, 2011, White stated that she was taking care of her three-year-old grandson all day, five days a week and he kept her mind off her depression during the day. [R. 22, R. 1078 (Ex. 32F)].

- In the examination with Dr. Kent, White stated that she watched her three-year-old and six-month-old grandchildren, fixed meals and occasionally went to the casino. [R. 22, R. 443 (Ex. 11F)].

- In her August 13, 2010, Adult Function Report, White stated that she got up and sat in a recliner most of the day; that her two young grandchildren were there during the day and her husband and son helped with them; that she made simple meals, did dishes, went grocery shopping twice a month with her daughter, watched television and went to church once a month. [R. 22, R. 319-326 (Ex. 6E)]. In an Adult Function Report dated April 1, 2011, White stated that she fed and watched her grandchildren, made simple meals, did no housework, shopped for groceries once a month and only drove if she had to. [R. 22, R. 344-351 (Ex. 10E)].

Support in the medical record is among the various factors properly considered in making a credibility determination. 20 C.F.R. §§ 404.1529, 416.929. In his decision, the ALJ discussed the portions of the records he believed contradict White's subjective statements, thus satisfying his duty to support her credibility finding with substantial evidence. Furthermore, it is not the diagnosis of a condition, but the functional consequences of the condition that form the basis of a disability determination. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995) (the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th

Cir. 1988) (the mere diagnosis of arthritis says nothing about the severity of the condition); *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007) (unpublished) (diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); *Scull v. Apfel*, 221 F.3d 1352 (10th Cir. 2000) (unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the cause of a claimant's condition).

The ALJ's decision is supported by substantial evidence, and the court "may neither reweigh the evidence nor substitute [its] discretion for that of the Commissioner." *Hamlin,* 365 F.3d at 1214 (quotation omitted).

### 3. RFC and Step Five Determination

White argues that neither the RFC nor the Step Five determination that she could perform other work are supported by substantial evidence. Specifically, she contends that the ALJ failed to formulate an RFC that included functional limitations related to the limited range of motion in her cervical spine and the anxiety she claims she experiences from riding in a car.

The ALJ found that White's cervical fusion was a severe impairment. [R. 17]. He cited treating records from treating physician James C. Mayoza, M.D., who stated that White would have permanent limitation of motion in flexion and extension and, therefore, there would be "some residual disability as a result of this limitation of flexion which from a functional standpoint will interfere with activities of daily living to a certain degree." [R. 21, R. 439 (Ex. 10F)]. The ALJ acknowledged that White has restricted range of motion of the neck and "some pain" consistent with fusion surgery. [R. 24]. However, he concluded White's daily activities were consistent with the performance of light work. *Id.* Citing the September 17, 2010, report of consultative examiner Johnson Gourd, M.D., he pointed out that White had demonstrated 5/5 strength with full

range of motion in all extremities and "the claimant could look up." [R. 22, R. 658-663 (Ex. 16F)]. He also noted Dr. Gourd's observation that the "[e]xam felt less than fully reliable" and White gave "less than optimal effort," giving the example that "both shoulders 'stuck' at exactly the same level." [R. 22, R. 659 (Ex. 16F)]. Nevertheless, the ALJ stated, "To avoid excessive strain on her neck, she should avoid working above shoulder level," and he included that restriction in her RFC. [R. 19, 23].

The ALJ also acknowledged White's mental impairments, including PTSD and panic disorder, restricted her to "simple, repetitive tasks, she can relate to supervisors and co-workers only superficially, and she cannot work with the public," and concluded that "[t]hese limitations reasonably reflect the claimant's objective limitations on and prior to December 31, 2011." [R. 23-24].

White argues the restriction does not adequately address the "significant stress and anxiety when she has to travel in a car." [Dkt. #18 at 13]. However, the ALJ gave "significant weight" to the January 10, 2011, opinion of state agency psychologist, Janice B. Smith, Ph.D., who concluded, *inter alia*, that White was "not significantly limited" in her ability to travel in unfamiliar places or use public transportation." [R. 24, R. 714 (Ex. 19F)]. Likewise, he gave "significant weight" to the June 1, 2011, Case Analysis of Edith King, Ph.D., who affirmed Dr. Smith's assessment. [R. 24, R. 809 (Ex. 23F)]. And White testified that prior to December 31, 2011, she was still driving if she "had to." [R. 41]. Finally, no treating or examining physicians opined as to any limitation on her ability to drive or ride in a car.

## Conclusion

The undersigned finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts and further that there is substantial

9

evidence in the record to support the ALJ's decision. Accordingly, the the decision of the Commissioner finding White is not disabled is hereby **AFFIRMED**.

ENTERED this 2nd day of February, 2017.

_____
Paul J. Cleary
United States Magistrate Judge